UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CHESS BUILDERS LLC; 2337 BEDFORD LLC; OTTS OCEAN LLC; DEEGAN 135 REALTY LLC; S. WIEDER ARCHITECT P.C.; and FISCHER+MAKOOI ARCHITECTS PLLC,<br><br>*Defendants*. | Index No.<br><br>**COMPLAINT** |

Plaintiff Fair Housing Justice Center, Inc. ("FHJC") by its attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, for its Complaint against the above-named Defendants, alleges as follows:

## INTRODUCTION

1.      This action is being brought to halt the discriminatory housing practices of Defendant Chess Builders, LLC ("Chess Builders") and various companies working with it in New York City to design and construct inaccessible rental housing.

2.       Chess Builders has developed numerous multi-family rental buildings in New York City, including The Arches in the South Bronx, a 430-unit building with a mix of market-rate and low- and moderate-income apartments which opened for rental in 2022.

3.      Although it has been well settled for decades that developers and architects are required to design and construct new residential multi-family buildings to have certain accessibility features for people with physical disabilities in New York City, Chess Builders and its architects have disregarded their legal obligations to do so at The Arches and two Brooklyn rental buildings.

1

4.      Plaintiff FHJC files this action seeking injunctive relief to stop Defendants' illegal housing practices, as well as compensatory and punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Fischer+Makooi Architects PLLC resides in the judicial district, and because "a substantial part of the events . . . giving rise to the claim[s]" occurred at the Arches, a multi-family residential building with over 400 units located in the Bronx.

## THE PARTIES

### *Plaintiff*

7.      FHJC is a non-profit organization based in New York City that is dedicated to ensuring all people have equal access to housing opportunities in the New York City metropolitan region by eliminating housing discrimination and creating open, accessible, and inclusive communities.

8.      Among other things, FHJC: (a) provides information to the public and other non-profit organizations in the New York City area about fair housing laws; (b) provides intake counseling to individuals and organizations who have made allegations of housing discrimination; (c) conducts testing and other investigations of allegations of housing discrimination; (d) makes legal referrals to cooperating attorneys; and (e) provides post-referral

litigation support services. FHJC provides these services free of charge and without regard to income.

9.      FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to non-profit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further FHJC's mission, including the publication and dissemination of reports and educational materials.

10.      FHJC operates the Adele Friedman Housing Accessibility Fund (the "Fund") for the purpose of providing financial assistance to persons with physical disabilities within FHJC's service area who need reasonable modifications made to their existing housing to make it accessible. FHJC established the Fund, in part, due to residential developers and design and construction professionals continuing to design and construct inaccessible multi-family housing in New York City in violation of fair housing laws.

11.      FHJC employs individuals as "testers," who are persons that pose as renters or homebuyers for the purpose of obtaining information about the conduct of housing developers, landlords, real estate and property management companies, brokers, agents, and others to determine whether illegal housing discrimination is taking place.

12.      FHJC expended staff time and other resources to investigate and to respond to Defendants' discriminatory practices, which diverted staff time and resources away from other FHJC activities.

13.      By engaging in illegal housing practices, Defendants have frustrated and continue to frustrate FHJC's mission to ensure that all people have equal access to housing opportunities in the greater New York City region.

***Defendants***

14.     Defendant Chess Builders is a limited liability company incorporated in Kings County, New York. Defendant Chess Builders' principal office is located at 199 Lee Avenue, #103, Brooklyn, New York 11211. Defendant Chess Builders was the developer of the buildings located at 2337 Bedford Avenue, Brooklyn, New York ("2337 Bedford Avenue"); 1326 Ocean Avenue, Brooklyn, New York ("1326 Ocean Avenue"); and 224-228 E 135th Street, Bronx, New York (the "Arches," or together with the foregoing buildings, the "Buildings").

15.     As the developer, Defendant Chess Builders was responsible for the overall design and construction of the dwelling units and common areas at the Buildings. Chess Builders is also responsible for the overall operation and management of the Buildings, including retaining a broker responsible for the initial lease-up of apartments at The Arches.

16.     The Arches consists of two newly constructed 25-story buildings, with 430 rental units total, in Mott Haven, Bronx. The building contains market rate as well as low- and moderate-income apartments, which, among other things, means that the owners and developer of The Arches have received public benefits to enable them to offer these below-market rents. These benefits may include a density bonus, zoning variances, tax credits, and low-interest financing.



17.     The Arches was developed by Chess Builders and is owned by Deegan 135 Realty LLC ("Deegan 135 Realty"). Fischer+Makooi Architects was the architect of record for the project.

18.     Defendant Deegan 135 Realty is a limited liability company incorporated in Kings County, New York. Defendant Deegan's principal office is 199 Lee Avenue, PMB 103, Brooklyn, New York 11211. As the owner of the Arches, Defendant Deegan 135 Realty was responsible for the overall design and construction of the dwelling units and common areas at The Arches, as well as for the ongoing operation and management of The Arches.

19.     Defendant Fischer+Makooi Architects ("FMA") is a professional service limited liability company incorporated in New York, New York. Defendant FMA's principal office is located in the Southern District of New York at 242 West 30th Street, Suite 1102, New York, NY 10001. Upon information and belief, Defendant FMA is the architectural and engineering firm that designed and constructed the multi-family residential dwelling units and common areas at The Arches.

20.     2337 Bedford Avenue is a newly constructed 6-story, 27-unit rental building in Flatbush, Brooklyn.



21.     The building was developed by Chess Builders and is owned by 2337 Bedford LLC ("Bedford Ave Owner"). S. Wieder Architect P.C. ("SWA") was the architect of record for the project.

22.     Defendant Bedford Ave Owner is a limited liability company incorporated in Kings County, New York. Defendant Bedford Ave Owner's principal office is 59 Montrose Avenue, #1, Brooklyn, New York 11206. Defendant Bedford Ave Owner is the owner of the

building located at 2337 Bedford Avenue. As the owner, Defendant Bedford Ave Owner was responsible for the overall design and construction of the dwelling units and common areas at 2337 Bedford Avenue.

23.     Defendant SWA (together with Defendant FMA, the "Architect Defendants") is a professional service corporation incorporated in Kings County, New York. Defendant SWA's principal office is 376 Wallabout Street, #5, Brooklyn, New York 11206. Upon information and belief, Defendant SWA is the architectural firm that designed and constructed the multi-family residential dwelling units and common areas at 2337 Bedford Avenue.

24.     1326 Ocean Avenue is an 8-story, 116-unit rental building in Ditmas Park, Brooklyn.



25.     1326 Ocean Avenue was developed by Chess Builders and is owned by Otts Ocean LLC ("Otts Ocean"). The designer was Karl Fischer who, upon information and belief, is now deceased.

26.     Defendant Otts Ocean (together with Defendants Deegan 135 Realty and Bedford Ave Owner, the "Owner Defendants") is a limited liability company incorporated in Kings County, New York. Defendant Otts Ocean's principal office is 311 Rogers Avenue, Brooklyn, New York 11225. Otts Ocean is the owner of the building located at 1326 Ocean

Avenue. As the owner, Defendant Otts Ocean was responsible for the overall design and construction of the dwelling units and common areas at 1326 Ocean Avenue.

## STATUTORY AND REGULATORY FRAMEWORK

27.     Plaintiff brings this action against Defendants for violations of the Fair Housing Act (FHA), New York State Human Rights Law (NYSHRL), and New York City Human Rights Law (NYCHRL). As a result of Defendants' illegal conduct, as described herein, renters in New York City have been denied the opportunity to rent apartments simply because they have physical disabilities.

***The Fair Housing Act***

28.     In 1988, as part of comprehensive amendments to the FHA to prohibit discrimination on the basis of disability, Congress enacted the Fair Housing Act Amendments ("FHAA"), which are design and construction accessibility requirements.[1] The legislative history of the FHAA reflects Congressional findings that steps and elevated thresholds at building or unit entrances send the same signal to persons using a wheelchair as a posted sign saying "No Disabled People Allowed."

29.     In considering the 1988 Amendments, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including "architectural barriers" erected by architects, developers, and builders who fail to design and construct dwellings and common use areas at those dwellings accessible to and adaptable by people with physical disabilities. H.R. Rep. No. 100-711, at 25

---

[1] The FHAA uses the term "handicap" rather than "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). This complaint uses the terms "disability" and "handicap" interchangeably. The term "disability" is more generally accepted.

(1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2186; 134 Cong. Rec. S10454, 10463 (Aug. 1, 1998).

30.     The FHAA mandates that multi-family residential buildings containing four or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings"), are subject to certain design and construction requirements. Covered multi-family dwellings must provide:

    a.  Public-use and common-use areas that are readily accessible to, and usable by, people with mobility impairments;

    b.  Doors designed to allow passage into and within all premises within such dwellings that are sufficiently wide to allow passage by people in wheelchairs;

    c.  An accessible route into and through the dwellings;

    d.  Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

    e.  Reinforcements in bathroom walls that allow for the later installation of grab bars; and

    f.  Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

31.     Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989. 24 C.F.R. § 100.205. HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporate the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSI"). HUD published the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.  In April 2013, HUD and DOJ issued joint guidance on the Accessibility

(Design and Construction) Requirements for Covered Multifamily Dwellings under the Fair Housing Act.

**The Americans with Disabilities Act**

32.     The Americans with Disabilities Act ("ADA") requires that public use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks, and restrooms, built for first use after January 26, 1993, be designed and constructed so as to enable the full and equal enjoyment of services, facilities, privileges, and accommodations of a place of public accommodation by people with physical disabilities. 28 C.F.R. § 36.406, Appendix A (Standard 4.6).

**The New York State Human Rights Law**

33.     The NYSHRL recognizes the invidious threat posed by unlawful discrimination, declaring that New York State "has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" free of "discrimination, prejudice, intolerance," and other barriers to equal opportunity. NYSHRL § 290(3).

34.     To ensure that its critical objectives are satisfied, the New York Legislature (the "Legislature") modified the NYSHRL in 2019 to provide:

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. *Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct.*

NYSHRL § 300 (emphasis added); *see also* NY LEGIS 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421).

35.     Consistent with these principles, the NYSHRL prohibits failing to design and construct covered multi-family dwellings in an accessible manner. NYSHRL § 296(5), (18).

***The New York City Human Rights Law***

36.     In 1965, the New York City Council (the "City Council"), seeking to eradicate housing discrimination in New York City, passed the NYCHRL. The City Council explained the law's purpose:

> In the city of New York, with its great cosmopolitan population, there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences . . . . The council hereby finds and declares that prejudice, intolerance, bigotry, and discrimination . . . threaten the rights and proper privileges of its inhabitants and menace the institutions and foundation of a free democratic state.

NYCHRL § 8-101.

37.     The NYCHRL likewise prohibits discrimination because of disability. NYC Admin. Code, § 8-107(5); *see id.* § 27-292.8 (containing the accessibility requirements under the New York City Building Code).

## FACTUAL BACKGROUND

***Lack of Accessibility at The Arches***

38.     The Arches is a 25-story, 430-unit rental building located at 224-228 East 135th Street, Mott Haven, Bronx.

39.     The Arches obtained a certificate of occupancy in March 2022.

40.     All of the apartments at The Arches are covered dwelling units as defined by the FHA.

41.     The Arches has an onsite parking garage that is available for use by tenants and their guests.

10

42.     Common area amenities at The Arches include, among other things, a bike room, gym, package room, laundry facility, media room, kids' playroom, concierge, valet service, storage facility, garden, and roof deck.

43.     On May 12, 2022, the FHJC sent two testers to The Arches posing as two cousins to inquire about available two-bedroom apartments on behalf of a relative with a physical disability who uses a wheelchair.

44.     The two FHJC testers met with a woman named Chanel Holley-Mason, a licensed salesperson for EXR, which is a real estate brokerage.

45.     The leasing agent showed the FHJC testers three two-bedroom apartments and one one-bedroom apartment.

46.     The testers observed the following inaccessible features during their visit to The Arches:

a.   Bathroom doors in one unit were too narrow;

b.   Bedroom doors in two units were too narrow;

c.   Walk-in closet doors in two units were too narrow;

d.   Bathroom in one unit had insufficient clear maneuvering floor space;

e.   Front entrance to building required excessive force to open;

f.   Mailboxes were inaccessible because they were too high;

g.   Community game room entrance had an 8-inch step;

h.   Washers and dryers in laundry room were stacked and inaccessible because they were too high;

i.   Garbage room had a trash chute twist handle that required excessive force to open;

j.   Doors to library, lounge, and conference rooms were too narrow;

k.   Door to rooftop deck was too narrow; and

11

l.     There were no designated accessible parking spaces in the parking garage.

47.     On April 6, 2022, the FHJC sent another tester to The Arches posing as a father to inquire about apartments and the onsite parking garage on behalf of himself and his wife. The tester also represented that he had a grown son with disabilities who uses a wheelchair and would need to have an accessible parking space when he visited.

48.     The FHJC tester met with Ms. Holley-Mason, the same woman with whom the previous FHJC testers had met.

49.     The leasing agent showed the tester the parking garage.

50.     The tester did not observe any designated accessible parking spaces in the garage.

51.     The leasing agent told the tester that there were no accessible parking spaces, and that parking was by valet. However, for valet parking to comply with the ADA, there would need to be an accessible designated location for drivers and passengers to park the vehicle and disembark with an accessible route to the building. The testers were not told about and did not observe any such designated area.

*Lack of Accessibility at 2337 Bedford Avenue*

52.     2337 Bedford Avenue is a 6-story, 27-unit rental building located at 2337 Bedford Avenue, Flatbush, Brooklyn.

53.     2337 Bedford Avenue obtained a certificate of occupancy in June 2022.

54.     All of the apartments at 2337 Bedford Avenue are covered dwelling units as defined by the FHA.

55.     2337 Bedford Avenue has an onsite parking garage for use by tenants.

12

56.     Common area amenities at 2337 Bedford Avenue include, among other things, bike storage, fitness center, laundry facility, lounges, meeting room, storage lockers, and a furnished and landscaped rooftop.

57.     On November 28, 2022, the FHJC sent two testers to 2337 Bedford Avenue posing as friends to inquire about available two-bedroom apartments on behalf of a relative with disabilities who uses a wheelchair.

58.     The two FHJC testers met with a woman who purported to be a real estate salesperson with Rentopia, which is a real estate agency.

59.     The real estate agent showed the testers one two-bedroom apartment.

60.     The testers observed the following inaccessible features during their visit to 2337 Bedford Avenue:

    a.  There were no designated accessible parking spaces in the building's parking garage;

    b.  The threshold at the unit front door was too steep without being beveled or tapered;

    c.  The thresholds at both bathroom doors were too steep without being beveled or tapered;

    d.  The climate control panels were inaccessible because they were too high;

    e.  Electrical outlets throughout the unit were not in an accessible location;

    f.  Both bathrooms in the unit had insufficient clear maneuvering floor space;

    g.  Some common area doors and trash chutes required too much force to open;

    h.  Interior door thresholds to basement amenity areas were too steep and unbeveled;

    i.  There was a 2-inch step up onto the terrace from the hallway on the second floor;

    j.  The width of the common area hallway to a refuse room was too narrow;

k.   Trash chute in a refuse room required excessive force to open;

l.   Public restroom on first floor did not have grab bars;

m.   Top row of mailboxes was inaccessible because it was too high; and

n.   Top storage lockers in the mailroom were inaccessible because they were too high.

### *Lack of Accessibility at 1326 Ocean Avenue*

61.   1326 Ocean Avenue is an 8-story, 116-unit rental building located at 1326 Ocean Avenue, Ditmas Park, Brooklyn.

62.   1326 Ocean Avenue obtained a certificate of occupancy in March 2018.

63.   All of the apartments at 1326 Ocean Avenue are covered dwelling units as defined by the FHA.

64.   1326 Ocean Avenue has an onsite parking garage.

65.   Common area amenities at 1326 Ocean Avenue include, among other things, a bike room, gym, children's playroom, and laundry facility.

66.   On October 14, 2022, the FHJC sent two testers to 1326 Ocean Avenue posing as a husband and wife to inquire about a one or two-bedroom apartment on behalf of a relative with disabilities who uses a wheelchair.

67.   The two FHJC testers arranged via email to visit 1326 Ocean Avenue after responding on October 11, 2022, to a listing on StreetEasy. When they arrived at the building on October 14 for the pre-arranged tour, the person they had communicated with via email did not show up. Instead, a woman in the lobby offered to get the superintendent of the building, Jimmy, to show them around.

68.   The superintendent showed the testers two apartments and gave them a tour of the building's amenities.

69.     The testers observed the following inaccessible features during their visit

to 1326 Ocean Avenue:

a.   Multiple climate control switches in both units were inaccessible because
     they were too high;

b.   One unit floor plan had bedroom doors that were too narrow;

c.   Excessive force was required to open and close the entrance to building
     which had a sign posted that said, "pull hard & push hard";

d.    There was no curb cut at the building front entrance;

e.   Route to portion of rooftop deck lounge area with hammock seating was
     separated from the rest of the deck by a rock-filled surface measuring 11
     and 1/8 inches wide; and

f.   Both routes to outdoor common areas from workroom and gym included
     steps that were over 6 inches high.

***Injury to FHJC***

70.     As a result of the illegal and discriminatory actions described above,

Defendants have injured FHJC by frustrating its mission of creating communities free of

discrimination.

71.     Defendants' discriminatory conduct perpetuates unequal housing

opportunities in New York and frustrates FHJC's mission by creating inaccessible housing in

buildings developed and/or operated by Defendant Chess Builders.

72.     Defendants have also injured FHJC by causing it to divert scarce resources

to identify and counteract Defendants' unlawful housing practices. Those resources could have

been used to engage in other activities and provide other services, including public education

about fair housing laws, instead of countering Defendants' discriminatory conduct.

73.     Until these violations are remedied, Defendants' illegal and discriminatory

actions will continue to injure FHJC by, *inter alia*:

a.  interfering with programs and services intended to bring about equality of opportunity in housing;

b.  requiring the commitment of scarce resources, including staff time and funding, to investigate and counter Defendants' illegal conduct, thus diverting those resources from other activities, such as educational, outreach, and counseling services; and

c.  frustrating FHJC's organizational mission and goals of promoting the equal availability of housing to all persons without regard to disability.

74.     Plaintiff FHJC will cause a copy of this complaint to be served on the New York City Commission of Human Rights and the New York City Corporation Counsel in compliance with § 8-502(c) of the NYCHRL.

**FIRST CAUSE OF ACTION**
Fair Housing Act – Design and Construction
Against Defendant Chess Builders and the Owner Defendants

75.     Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

76.     The residential units at the Buildings are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

77.     Defendants have designed and constructed covered multi-family dwellings and common use areas at the Buildings in violation of 42 U.S.C. § 3604(f)(3)(C).

78.     As a direct and proximate result of these Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

79.     As a direct and proximate result of these Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the Fair Housing

16

Act, Plaintiff FHJC has suffered, and will continue to suffer damages, including diversion of resources and frustration of mission.

80.     These Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the FHA was intentional, willful, or done with reckless disregard.

### SECOND CAUSE OF ACTION
Fair Housing Act – Design and Construction
Against the Architect Defendants

81.     Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

82.     The residential units at the Arches and 2337 Bedford Avenue are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

83.     Defendant FMA has designed and constructed covered multi-family dwellings and common use areas at the Arches in violation of 42 U.S.C. § 3604(f)(3)(C).

84.     Defendant SWA has designed and constructed covered multi-family dwellings and common use areas at 2337 Beford Avenue in violation of 42 U.S.C. § 3604(f)(3)(C).

85.     As a direct and proximate result of these Defendants' failure to design and construct covered multi-family dwellings in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

86.     As a direct and proximate result of these Defendants' failure to design and construct covered multi-family dwellings in compliance with the accessibility requirements of

the Fair Housing Act, Plaintiff FHJC has suffered, and will continue to suffer damages, including

diversion of resources and frustration of mission.

87.     These Defendants' failure to design and construct covered multi-family

dwellings in compliance with the accessibility requirements of the FHA was intentional, willful,

or done with reckless disregard.

### THIRD CAUSE OF ACTION
Americans with Disabilities Act
Against Defendant Chess Builders, the Owner Defendants, and the Architect Defendants

88.     Plaintiff realleges and incorporates by reference the allegations set forth in

this Complaint as if fully set forth herein.

89.     The parking garages at The Arches and 2337 Bedford Avenue are

designated for public use and are public accommodations as defined by 42 U.S.C. § 12181(7).

90.     The parking garages at The Arches and 2337 Bedford Avenue and the

facilities and accommodations appurtenant to the public use of the parking garage are subject to

the prohibition on discrimination contained in 42 U.S.C. § 12182(a) and are subject to the design

and construction requirements of 42 U.S.C. § 12183(a)(1).

91.     In this Complaint, Plaintiff has identified ADA violations in the parking

garages at both The Arches and 2337 Bedford Avenue.

92.     Defendants have failed to design and construct the parking garage at The

Arches and 2337 Bedford Avenue in a manner that the facilities are readily accessible to, and

usable by, people with physical disabilities.

93.     As a direct and proximate result of these Defendants' failure to design and

construct The Arches and 2337 Bedford Avenue parking garages in compliance with the

accessibility requirements of the ADA, public accommodations have been constructed in New York City that are inaccessible to persons with physical disabilities.

94.     As a direct and proximate result of these Defendants' failure to design and construct The Arches and 2337 Bedford Avenue parking garages in compliance with the accessibility requirements of the ADA, Plaintiff FHJC has suffered and will continue to suffer damages, including diversion of resources and frustration of mission.

95.     These Defendants' failure to design and construct in compliance with the accessibility requirements of the ADA was intentional, willful, or done with reckless disregard.

**FOURTH CAUSE OF ACTION**
New York State Human Rights Law: Design and Construction
Against Defendant Chess Builders and the Owner Defendants

96.     Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

97.     Plaintiff is a person as defined by New York Executive Law § 292(1).

98.     The Buildings are "housing accommodations" as defined by New York Executive Law § 292(10).

99.     Defendants designed and constructed the Buildings in violation of the accessibility requirements found in New York Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

100.     As a direct and proximate result of Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the NYSHRL, Plaintiff has suffered and will continue to suffer damages, including diversion of resources and frustration of mission.

101.    Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the NYSHRL was intentional, willful, or with reckless disregard.

**FIFTH CAUSE OF ACTION**
New York State Human Rights Law: Design and Construction
Against the Architect Defendants

102.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

103.    Plaintiff is a person as defined by New York Executive Law § 292(1).

104.    The Arches and 2337 Bedford Avenue are "housing accommodations" as defined by New York Executive Law § 292(10).

105.    Defendant FMA designed and constructed the Arches in violation of the accessibility requirements found in New York Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

106.    Defendant SWA designed and constructed 2337 Bedford Avenue in violation of the accessibility requirements found in New York Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

107.    As a direct and proximate result of Defendants' failure to design and construct housing accommodations in compliance with the accessibility requirements of the NYSHRL, Plaintiff has suffered and will continue to suffer damages, including diversion of resources and frustration of mission.

108.    Defendants' failure to design and construct housing accommodations in compliance with the accessibility requirements of the NYSHRL was intentional, willful, or with reckless disregard.

**SIXTH CAUSE OF ACTION**
New York City Human Rights Law: Design and Construction
Against Defendant Chess Builders and the Owner Defendants

109.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

110.    Plaintiff is a person as defined by New York City Administrative Code § 8-102(1).

111.    The Buildings are "housing accommodations" as defined by New York City Administrative Code § 8-102(10).

112.    Defendants designed and constructed the Buildings in violation of the accessibility requirements found in New York City Administrative Code § 27-292.8296(18)(3).

113.    By doing so, these Defendants are discriminating in the furnishing of facilities or services in connection with housing accommodations based on disability in violation of New York City Administrative Code § 8-107(5)(a)(2).

114.    As a direct and proximate result of Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the NYCHRL, Plaintiff has suffered and will continue to suffer damages, including diversion of resources and frustration of mission.

115.    Defendants' failure to design and construct the Buildings in compliance with the accessibility requirements of the NYCHRL was intentional, willful, or with reckless disregard.

116.    Plaintiff has caused to be served a copy of this Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## SEVENTH CAUSE OF ACTION
New York City Human Rights Law: Design and Construction
Against the Architect Defendants

117.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

118.    Plaintiff is a person as defined by New York City Administrative Code § 8-102(1).

119.    The Arches and 2337 Bedford Avenue are "housing accommodations" as defined by New York City Administrative Code § 8-102(10).

120.    Defendant FMA designed and constructed the Arches in violation of the accessibility requirements found in New York City Administrative Code § 27-292.8296(18)(3).

121.    Defendant SWA designed and constructed 2337 Bedford Avenue in violation of the accessibility requirements found in New York City Administrative Code § 27-292.8296(18)(3).

122.    By doing so, these Defendants are discriminating in the furnishing of facilities or services in connection with housing accommodations based on disability in violation of New York City Administrative Code § 8-107(5)(a)(2).

123.    As a direct and proximate result of Defendants' failure to design and construct the housing accommodations in compliance with the accessibility requirements of the NYCHRL, Plaintiff has suffered and will continue to suffer damages, including diversion of resources and frustration of mission.

124.    Defendants' failure to design and construct the housing accommodations in compliance with the accessibility requirements of the NYCHRL was intentional, willful, or with reckless disregard.

22

125.    Plaintiff has caused to be served a copy of this Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a)  Declaring that Defendants' discriminatory practices violate the FHA, ADA, NYSHRL, and NYCHRL, as applicable;

b)  Enjoining Defendants, their agents, employees, and successors, and all other persons in active concert or participation with Defendants, from discriminating on the basis of disability by failing to design and construct covered multi-family dwellings in compliance with the accessibility requirements of the FHA, NYSHRL, and NYCHRL, and failing to design and construct public accommodations in compliance with the accessibility requirements of the ADA;

c)  Enjoining Defendants, their  agents, employees, and successors, and all other persons in active concert or participation with Defendants to:

   i.  Make or pay for all necessary retrofitting in the multi-family dwellings and common areas of the Buildings;

   ii.  Make all necessary modifications to the design and construction of multi-family covered dwellings currently planned for construction or under construction in New York City;

   iii.  Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

   iv.  Train all management, agents, and employees on fair housing laws, including accessibility requirements for multi-family residential dwellings; and

v.   Allow monitoring of their design and construction of covered multi-family dwellings and public accommodations for compliance with the accessibility requirements of the FHA, ADA, NYSHRL, and NYCHRL;

d)   Awarding such damages to Plaintiff as will fully compensate it for injury caused by Defendants' unlawful practices;

e)   Awarding punitive damages to Plaintiff;

f)   Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

g)   Granting Plaintiff such other further relief as may be just and proper.

Dated: December 19, 2023
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

*Laura Kokotailo*

Diane L. Houk
Sara Luz Estela
Laura S. Kokotailo

600 Fifth Avenue, 10th Floor
New York, New York 10020
dhouk@ecbawm.com
sestela@ecbawm.com
lkokotailo@ecbawm.com
(212) 763-5000

*Attorneys for Plaintiff*